UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Candice Wilhelm, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>Plaid, Inc.<br><br>        Defendant. | Case No. _____<br><br>**CLASS ACTION**<br><br>**COMPLAINT** |

## CLASS ACTION COMPLAINT

Now comes Plaintiff, Candice Wilhelm ("Plaintiff"), on behalf of herself and all other similarly situated, through Counsel, and pursuant to 740 ILCS § 14/1 *et seq.*, and Fed. R. Civ. P. 23, against Defendant, Plaid, Inc. ("Plaid" or "Defendant"), to redress and curtail Defendant's unlawful collections, obtainments, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric identifiers and/or biometric information (collectively referred to herein as "biometric data" and/or "biometrics"). Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1. Plaid is a "fintech" company which provides technology, including identity

- 1 -

verification services, to its clients which include "crypto" companies such as Banxa, Binance, Coinbase, Gemini and Kraken.

2. As part of its identity verification services, Plaid collects users' government issued identification. Plaid then has the user submit a real time photograph or video of their face, i.e. a "selfie." Plaid then performs a facial geometry scan to confirm whether the selfie and photo on the government issued identification are the same person. *See* https://plaid.com/products/identity-verification/ (last visited Feb. 13, 2024).



3. Plaintiff opened a Banxa account within the five years immediately preceding the filing of this matter.

4. As part of signing up, and/or gaining access to her Banxa account, Plaid collected and retained her biometric information as detailed herein.

5. Plaintiff opened a Binance account within five years immediately preceding the filing of this matter.

6. As part of signing up, and/or gaining access to her Binance account, Plaid collected and retained her biometric information as detailed herein.

7. Plaintiff opened a Coinbase account within five years immediately preceding the filing of this matter.

8. As part of signing up, and/or gaining access to her Coinbase account, Plaid collected and retained her biometric information as detailed herein.

9. Plaintiff opened a Gemini account within five years immediately preceding the filing of this matter.

10. As part of signing up, and/or gaining access to her Gemini account, Plaid collected and retained her biometric information as detailed herein.

11. Plaintiff opened a Kraken account within five years immediately preceding the filing of this matter.

12. As part of signing up, and/or gaining access to her Kraken account, Plaid collected and retained her biometric information as detailed herein.

13. Facial geometry scans are unique, permanent biometric identifiers associated with each user that cannot be changed or replaced if stolen or compromised. Plaid's unlawful collection, obtainment, storage, and use of its users' biometric data exposes them to serious and irreversible privacy risks. For example, if Plaid's database containing facial geometry scans or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed, Plaid users have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

14. The Illinois legislature enacted BIPA to protect residents' privacy interests in their biometric data. *See Heard v. Becton, Dickinson & Co*., 440 F. Supp. 3d 960, 963 (N.D. Ill. 2020), citing *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1199 (2019).

15. Courts analogize an individual's privacy interest in their unique biometric data to their interest in protecting their private domain from invasion, such as from trespass. *See Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020), as amended on denial of reh'g and reh'g *en banc*, (June 30, 2020) and opinion amended on denial of reh'g *en banc*, 2020 U.S. App. LEXIS 20468, 2020 WL 6534581 (7th Cir. 2020).

16. In recognition of these concerns over the security of individuals' biometrics – particularly in the City of Chicago, which has been selected by major national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" (740 ILCS 14/5(b)) – the Illinois Legislature enacted the BIPA, which provides, *inter alia*, that a private entity like Plaid may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used; (3) receives a written release from the person for the collection of his or her biometric identifiers or information; and (4) publishes publicly-available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a)-(b).

17. The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id*.

18. Specifically, upon information and belief, Plaid has created, collected, and stored thousands of "face templates" – highly detailed geometric maps of the face from countless Illinois residents whose selfies and state-issued ID's were collected by Plaid. Each face template that Plaid extracts is unique to a particular individual in the same way that a fingerprint or voiceprint uniquely identifies a particular individual.

19. Plaid is a "private entity" as that term is broadly defined by BIPA and Plaid is subject to all requirements of BIPA. *See* 740 ILCS § 14/10.

## JURISDICTION AND VENUE

20. This is a Class Action Complaint for violations of the Illinois Biometric Information Privacy Act (740 ILCS 14/1 et seq.) brought pursuant to Fed. R. Civ. P. 23 seeking statutory and actual damages.

21. Venue is proper in this Court because a substantial amount of the acts and omissions giving rise to this Action occurred within this judicial district.

22. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because Plaintiff and the proposed class members are all residents of Illinois, Plaid is domiciled within this judicial district, and the amount in controversy exceeds $75,000.

23. This Court has jurisdiction over this dispute pursuant to the Class Action Fairness Act ("CAFA") because the prospective class includes over 100 people and the amount in controversy exceeds $5,000,000.

24. At all relevant times, Plaintiff and the proposed Class are residents of the state of Illinois and the violations of BIPA as detailed herein occurred while Plaintiff and the proposed Class were located in Illinois.

25. At all relevant times, Plaid has deliberately availed itself to conducting business with Illinois residents and has directly and indirectly, through its clients, specifically targeted Illinois residents to conduct business with.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

26. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

27. Plaintiff opened a Banxa account within the five years immediately preceding the filing of this matter.

28. As part of signing up, and/or gaining access to her Banxa account, Plaid collected and retained her biometric information as detailed herein.

29. Plaintiff opened a Binance account within five years immediately preceding the filing of this matter.

30. As part of signing up, and/or gaining access to her Binance account, Plaid collected and retained her biometric information as detailed herein.

31. Plaintiff opened a Coinbase account within five years immediately preceding the filing of this matter.

32. As part of signing up, and/or gaining access to her Coinbase account, Plaid collected and retained her biometric information as detailed herein.

33. Plaintiff opened a Gemini account within five years immediately preceding the filing of this matter.

34. As part of signing up, and/or gaining access to her Gemini account, Plaid collected and retained her biometric information as detailed herein.

35. Plaintiff opened a Kraken account within five years immediately preceding the filing of this matter.

36. As part of signing up, and/or gaining access to her Kraken account, Plaid collected and retained her biometric information as detailed herein.

37. At all relevant times, Plaid had no written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric information when the initial purpose for collecting or obtaining such biometric information has been satisfied or within 3 years of the individual's last interaction with Plaid, whichever occurs first.

38. Ostensibly, the purpose of Plaid's collection of Plaintiff's facial geometry was to verify Plaintiff's identity prior Plaid's clients opening an account in Plaintiff's name.

39. As such, Plaintiff's facial geometry should have been permanently destroyed by Plaid following the opening said accounts.

40. However, Plaid failed to permanently destroy Plaintiff's facial geometry following the opening of Plaintiff's accounts as detailed herein.

41. As such, Plaid's retention of Plaintiff's biometric information was unlawful and in violation of 740 ILCS § 14/15(a).

42. Plaid did not inform Plaintiff in writing that Plaid was collecting or storing her biometric information.

43. Instead, Plaintiff was simply instructed to upload her state issued identification forms and "selfie" photographs as part of the overall account opening processes detailed herein.

44. In fact, Plaid made no mention of biometric information, collection of biometric information, or storage of biometric information.

45. Moreover, Plaid did not inform Plaintiff in writing of the specific purpose and length of term for which her biometric information was being collected, stored, and used.

46. Plaid collected, stored, and used Plaintiff's biometric information without ever receiving a written release executed by Plaintiff which would consent to or authorize Plaid to do the same.

47. Additionally, Plaid disclosed, redisclosed, or otherwise disseminated a Plaintiff's biometric information (1) without Plaintiff's consent; (2) without Plaintiff's authorization to complete a financial transaction requested or authorized by Plaintiff; (3) without being required by State or federal law or municipal ordinance; or (4) without being required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

48. Plaid disclosed, redisclosed or otherwise disseminated Plaintiff's biometric information to Plaid's clients including Banxa, Binance, Coinbase, Gemini and Kraken.

49. Moreover, Plaid disclosed, redisclosed or otherwise disseminated Plaintiff's biometric information to its service providers, contractors, business partners, and collection agencies. *See* https://plaid.com/legal/#privacy-statement (last visited Feb. 13, 2024).

Case: 1:24-cv-01242 Document #: 1 Filed: 02/13/24 Page 9 of 16 PageID #:9

**How We Share Your Information**

We share information about you as follows:

- With other companies or individuals as service providers, contractors, or business partners to provide services for us and help support our business. We also share information with collection agencies in the event of delinquent payments from our developers.

- If we believe in good faith that disclosure is appropriate to comply with applicable law, regulation, or legal process (such as a court order or subpoena). This includes disclosure in connection with requests from law enforcement or other governmental authorities;

- If we believe your actions are inconsistent with our agreements or policies, or to protect the rights, privacy, safety, or property of Plaid or others;

- In the event of a change in ownership or control of all or part of our business (such as a merger, acquisition, reorganization, or bankruptcy);

- Between Plaid and our current and future parents, affiliates, subsidiaries and other companies under common control or ownership; and

- With your consent or at your direction.

We also collect, use, and share information that has been aggregated, and de-identified in a way so it cannot be used to identify you, for any purpose permitted under applicable law.

We may share Personal Data with third parties or allow them to collect Personal Data from our sites or services, as described above.

50. Plaid's collection and retention of biometric information as described herein is not unique to Plaintiff and is instead part of Plaid's policies and procedures which Plaid applies to all of its users, including the Class Members.

## RULE 23 CLASS DEFINITIONS AND ALLEGATIONS

51. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

52. Plaintiff brings Claims for Relief in violation of BIPA as a class action under Rule 23(a), (b)(2) and (b)(3). Plaintiff brings these claims on behalf of herself and all members of the following Rule 23 Class:

> **All Illinois residents who had their biometric information collected by Plaid at any point in the five (5) years preceding the filing of this Complaint.**

53. In the alternative, and for the convenience of this Court and the parties, Plaintiff may seek to certify other subclasses at the time the motion for class certification is filed.

54. **Numerosity (Rule 23(a)(1))**. The Class Members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that there are more than 1,000 people who satisfy the definition of the Class.

55. **Existence of Common Questions of Law and Fact (Rule 23(a)(2))**. Common questions of law and fact exist as to Plaintiff and the Class Members including, but not limited to, the following:

    a. Whether Plaid possessed Plaintiff's and the Class Members' biometric identifiers or biometric information without first developing a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with Plaid, whichever occurs first.

    b. Whether Plaid collected, captured, purchased, received through trade, or otherwise obtained Plaintiff's and the Class Members' biometric identifiers or biometric information,

without first: (1) informing Plaintiff and the Class Members in writing that a biometric identifier or biometric information is being collected or stored; (2) informing Plaintiff and the Class Members in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used; and (3) receiving a written release executed by Plaintiff and the Class Members

   c. Whether Plaid disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class Members' biometric identifiers or biometric information (1) without Plaintiff's and the Class Members' consent; (2) without Plaintiff's and the Class Members' authorization to complete a financial transaction requested or authorized by Plaintiff and the Class Members; (3) without being required by State or federal law or municipal ordinance; or (4) without being required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

   d. The damages sustained and the proper monetary amounts recoverable by Plaintiff and the Class Members.

   56. **Typicality (Rule 23(a)(3))**. Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like the Class Members, had their biometric identifiers and biometric information collected, retained or otherwise possessed by Plaid without Plaid's adherence to the requirements of BIPA as detailed herein.

   57. **Adequacy (Rule 23(a)(4))**. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in complex class actions.

   58. **Injunctive and Declaratory Relief (Rule 23(b)(2))**. Class certification of the Rule 23 claims is appropriate under Rule 23(b)(2) because Plaid acted or refused to act on grounds

generally applicable to the Class Members, making appropriate declaratory relief with respect to the Class Members as a whole.

59. **Predominance and Superiority of Class Action (Rule 23(b)(3))**. Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to the Class Members predominate over questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Plaid's common and uniform policies and practices illegally deprived Plaintiff and the Class Members of the privacy protections which BIPA seeks to ensure; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Plaid's practices.

60. Plaintiff intends to send notice to all Class Members to the extent required by Fed. R. Civ. P. 23.

### COUNT ONE: VIOLATION OF 740 ILCS § 14/15(a)

61. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

62. A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines. 740 ILCS § 14/15(a).

63. Plaid created and collected biometric templates of the Plaintiff's and the Class Members' faces which qualifies as biometric information as defined by BIPA.

64. At all relevant times, Plaid had no written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric information when the initial purpose for collecting or obtaining such biometric information has been satisfied or within 3 years of the individual's last interaction with Plaid, whichever occurs first.

65. Ostensibly, the purpose of Plaid's collection of Plaintiff's and the Class Members' facial geometry was to verify Plaintiff's and the Class Members' identities prior Plaid's clients opening an account in Plaintiff's and the Class Members' names.

66. As such, Plaintiff's and the Class Members' facial geometry should have been permanently destroyed by Plaid following the opening of said accounts.

67. However, Plaid failed to permanently destroy Plaintiff's and the Class Members' facial geometries following the opening of their Plaid accounts and instead retained Plaintiff's and the Class Members' biometric information.

68. Moreover, Plaintiff's and the Class Members' biometric information should have been permanently destroyed by Plaid after Plaintiff and the Class Members logged out or ceased interacting with Plaid's clients.

69. However, Plaid failed to permanently destroy Plaintiff's and the Class Members' biometric information after they logged out or ceased using the Plaid's clients platforms.

70. As such, Plaid's retention of Plaintiffs' and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(a).

## COUNT TWO: VIOLATION OF 740 ILCS § 14/15(b)

71. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

72. No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. 740 ILCS § 14/15(b).

73. Plaid did not inform Plaintiff and the Class Members in writing that Plaid was collecting or storing their biometric information.

74. Instead, Plaintiff and the Class Members were simply instructed to upload their state issued identification forms and "selfies" as part of the overall account opening process and this information was then processed by Plaid by creating biometric facial templates.

75. Moreover, Plaid did not inform Plaintiff and the Class Members in writing of the specific purpose and length of term for which their biometric information was being collected, stored, and used.

76. Plaid collected, stored, and used Plaintiff's and the Class Members' biometric information without ever receiving a written release executed by Plaintiff and the Class Members which would consent to or authorize Plaid to do the same.

77. As such, Plaid's collection of Plaintiffs' and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(b).

## COUNT THREE: VIOLATION OF 740 ILCS § 14/15(d)

78. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

79. No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

> (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;
>
> (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;
>
> (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or
>
> (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction. 740 ILCS § 14/15(d).

70. Plaid disclosed, redisclosed or otherwise disseminated Plaintiff's biometric information to Plaid's clients including Banxa, Binance, Coinbase, Gemini and Kraken.

71. Moreover, Plaid disclosed, redisclosed or otherwise disseminated Plaintiff's biometric information to its service providers, contractors, business partners, and collection agencies.

72. Plaid's disclosures, redisclosures, or otherwise disseminating of Plaintiff's and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(d).

**WHEREFORE**, individually, and on behalf of the Class Members, Plaintiff prays for: (1) certification of this case as a class action pursuant to Fed. R. Civ. P. 23 appointing the undersigned

counsel as class counsel; (2) a declaration that Defendant has violated BIPA, 740 ILCS § 14/1 *et seq*.; (3) statutory damages of $5,000.00 for each intentional and reckless violation of BIPA pursuant to 740 ILCS § 14/20(2), or alternatively, statutory damages of $1,000.00 per violation pursuant to 740 ILCS § 14/20(1) in the event the Court finds that Defendant's violations of BIPA were not willful; (4) reasonable attorneys' fees and costs and other litigation expense pursuant to 740 ILCS §14/20(3); (5) actual damages; and (6) for any other relief deemed appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class members hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

Dated: February 13th, 2024             Respectfully submitted,

By: */s/ Michael L. Fradin*
Michael L. Fradin, Esq.
8 N. Court St. Suite 403
Athens, Ohio 45701
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

By: */s/ James L. Simon*
James L. Simon (pro hac vice forthcoming)
11 1/2 N. Franklin Street,
Chagrin Falls, Ohio 44022
Telephone: (216) 816-8696
Email: james@simonsayspay.com