## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

CANDICE WILHELM, individually and on
behalf of all others similarly situated,

                            *Plaintiff*,

                v.

PLAID INC.,

                            *Defendant*.

Case No.:  1:24-cv-1242

District Judge LaShonda A. Hunt

Magistrate Judge Keri L. Holleb Hotaling

## DEFENDANT PLAID INC.'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

Nick Kahlon
John K. Theis
Blake Kolesa
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone: (312) 471-8700
Facsimile: (312) 471-8701
nkahlon@rshc-law.com
jtheis@rshc-law.com
bkolesa@rhsc-law.com

*Counsel for Plaid Inc.*

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

LEGAL STANDARDS ........................................................................................................... 3

ARGUMENT .......................................................................................................................... 5

I.      PLAINTIFF LACKS STANDING TO SUE PLAID. ....................................................... 5

      A.     Plaintiff Fails to Sufficiently Plead an Injury in Fact. ........................................... 5

      B.     Plaintiff In Fact Cannot Show an Injury. ............................................................... 6

II.     PLAID IS A "FINANCIAL INSTITUTION" EXEMPT UNDER BIPA. ........................ 8

      A.     Plaid's Identity Verification Services Are Financial in Nature or Incidental to Financial Activity. ........................................................................... 9

      B.     Plaid's Other Services are Financial in Nature or Incidental to Financial Activity. .............................................................................................................. 10

III.    THE COURT LACKS PERSONAL JURISDICTION OVER PLAID. ........................... 12

      A.     General Jurisdiction Does Not Exist. ................................................................... 12

      B.     Specific Jurisdiction Does Not Exist. .................................................................. 13

            1.     *The Complaint Does Not Allege Contacts by Plaid with Illinois.* .............. 13

            2.     *Plaid Has Virtually No Contacts with Illinois.* ......................................... 14

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*63d & Morgan Currency Exch., Inc. v. Citibank, N.A.*,
No. 23-cv-5048, 2024 WL 245189 (N.D. Ill. Jan. 23. 2024)...................................................... 4

*Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ......................................................................... 14, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................ 4, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................. 4

*Brook v. McCormley*,
873 F.3d 549 (7th Cir. 2017) ............................................................................. 12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)...................................................................................... 14, 15

*Castelaz v. Estee Lauder Companies*,
No. 22-cv-5713, 2024 WL 136872 (N.D. Ill. Jan. 10, 2024)............................... 15

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...................................................................................... 12, 13

*Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*,
No. 22-cv-7962, 2023 WL 5935694 (S.D.N.Y. Sept. 12, 2023) ........................... 8

*Duerr v. Bradley Univ.*,
590 F. Supp. 3d 1160 (C.D. Ill. 2022) .................................................................. 8

*Flynn v. FCA US LLC*,
39 F.4th 946 (7th Cir. 2022) ............................................................................. 4, 7

*Freedom From Religion Found., Inc. v. Zielke*,
845 F.2d 1463 (7th Cir. 1988) ............................................................................. 4

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)........................................................................................... 12

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ................................................................... 6

*Hyatt Int'l Corp. v. Coco*,
302 F.3d 707 (7th Cir. 2002) .......................................................................... 5, 12

ii

*In re Testosterone Replacement Therapy Prod. Liab. Litig.*,
    136 F. Supp. 3d 968 (N.D. Ill. 2015) .................................................. 13

*James v. City of Evanston*,
    No. 20-cv-00551, 2021 WL 4459508 (N.D. Ill. Sept. 29, 2021) ........................................... 11

*Johnson v. U.S. Off. of Pers. Mgmt.*,
    783 F.3d 655 (7th Cir. 2015) ................................................................. 4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).............................................................................. 5

*MAO-MSO Recovery II, LLC v. State Farm Mutual Auto. Ins. Co.*,
    994 F.3d 869 (7th Cir. 2021) ................................................................. 1

*McGoveran v. Amazon Web Servs., Inc.*,
    No. 1:20-cv-1399, 2023 WL 2683553 (D. Del. Mar. 29, 2023)............................. 8, 9, 10, 11

*N. Grain Mktg. v. Greving*,
    743 F.3d 487 (7th Cir. 2014) ............................................................... 13

*NBA Props., Inc. v. HANWJH*,
    46 F.4th 614 (7th Cir. 2022) ............................................................... 15

*Philos Techs., Inc. v. Philos & D, Inc.*,
    802 F.3d 905 (7th Cir. 2015) ............................................................... 15

*Powell v. DePaul Univ.*,
    No. 21-cv-3001, 2022 WL 16715887 (N.D. Ill. Nov. 4, 2022) ............................................ 8

*Privacy of Consumer Financial Information*,
    65 FR 33646-01 (May 24, 2000) .......................................................... 11

*Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) ................................................................. 5

*Redd v. Amazon Web Servs., Inc.*,
    673 F. Supp. 3d 943 (N.D. Ill. 2023) .................................................. 15

*Rogers v. CSX Intermodal Terminals, Inc.*,
    409 F. Supp. 3d 612 (N.D. Ill. 2019) .................................................... 5

*Salkauskaite v. Sephora USA, Inc.*,
    No. 18-cv-8507, 2020 WL 2796122 (N.D. Ill. May 30, 2022)............................................ 15

*Sapperstein v. Hager*,
    188 F.3d 852 (7th Cir. 1999) ................................................................. 5

*Shah v. Plaid Inc.*,
No. 22-cv-903 (N.D. Ill. July 17, 2023).......................................................... 2

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ............................................................... 6, 7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)................................................................................... 5

*Tamburo v. Dworkin*,
601 F.3d 693 (7th Cir. 2010) ........................................................... 12, 14

*Taylor v. McCament*,
875 F.3d 849 (7th Cir. 2017) ................................................................... 4

*Vereinsbank AG, et al.*,
86 Federal Reserve Bulletin 56 (2000) ................................................... 9

*Walden v. Fiore*,
571 U.S. 277 (2014)................................................................... 13, 14, 15

*Warth v. Seldin*,
422 U.S. 490 (1975)................................................................................. 4

*Weaver v. Champion Petfoods USA Inc.*,
471 F. Supp. 3d 876 (E.D. Wis. 2020), *aff'd*, 3 F.4th 927 (7th Cir. 2021) ............ 7

*Whitmore v. Arkansas*,
495 U.S. 149 (1990)................................................................................. 5

*Wilhelm v. BAM Trading Services, Inc.*,
No. 23-cv-14906 (N.D. Ill.) ................................................................ 2, 7

*Wilhelm v. Banxa Holdings, Inc.*,
No. 2023CH08359 (Cir. Ct. Cook Cty. Ill.)............................................ 2

*Zapadinsky v. Blue Diamond Growers*,
No. 23-cv-231, 2023 WL 5116507 (E.D. Wis. Aug. 7, 2023)................. 8

**STATUTES**

12 U.S.C. § 1843(k) .........................................................................8, 9, 10

12 U.S.C. § 5512(b) .....................................................................................9

15 U.S.C. § 6809(3)(A)..........................................................8, 9, 10, 11

735 ILCS 5/2-209(c) ................................................................................12

740 ILCS 14/15(a)–(b), (d) ................................................................................5

740 ILCS 14/25(c) ...........................................................................10, 12

**RULES**

Fed. R. Civ. P. 12(b)(1) ...............................................................1, 3, 8

Fed. R. Civ. P. 12(b)(2) ...............................................................1, 4, 12

Fed. R. Civ. P. 12(b)(6) ...........................................................1, 4, 6, 8

**OTHER AUTHORITIES**

12 C.F.R. § 225.28(b)(14)(i)(A) ...............................................10, 12

12 C.F.R. § 225.86(a)(2)(iii) ...........................................................9, 10

12 C.F.R. § 380.8(b) ..............................................................................11

12 C.F.R. § 1016.3(l)(3)(ii) .................................................................9

86 Fed. Res. Bull. 56, 2000 WL 49269 ..........................................10

Fed. Reserve Bd. Interpretive Letter, 2001 WL 35988615 (June 5, 2001)..................................11

Defendant Plaid Inc. ("Plaid") submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (b)(6), and (b)(2).

<h2 style="text-align:center"><strong><u>INTRODUCTION</u></strong></h2>

Plaintiff Candice Wilhelm ("Plaintiff"), a serial filer of copy-and-paste putative Illinois Biometric Privacy Act ("BIPA") class actions, has asserted spurious claims against Plaid without any factual or legal basis. Plaintiff appears to have targeted Plaid, a business-to-business company providing services to its financial technology ("fintech") and other financial services customers, as part of a "sue first and ask questions later approach,"[1] having sued it and seven other companies in copycat lawsuits pending in this District within six months of one another. That Plaintiff did not do her homework before filing this lawsuit against Plaid is underscored by the fact that, in opening accounts with the fintech customers she lists in her Complaint, she could not have interacted with the Plaid identity verification services challenged in her Complaint.[2] Indeed, none of the Plaid customers she references in her Complaint used these services at the time she signed up for them (or for most, even as of the date she filed suit). Plaintiff cannot pursue claims against Plaid as a matter of law because she lacks standing to do so, having no injury in fact. Further, even if Plaintiff could somehow remedy her lack of standing, Plaid is a Gramm-Leach-Bliley Act ("GLBA") financial institution exempt from BIPA's requirements, which means that all her claims fail for that reason. Finally, and compounding these multiple fatal deficiencies in Plaintiff's Complaint,

---

[1] *See MAO-MSO Recovery II, LLC v. State Farm Mutual Auto. Ins. Co.*, 994 F.3d 869, 879 (7th Cir. 2021) ("[T]hese plaintiffs' sue first and ask questions later approach risks stretching the limits of judicial patience, and [they] would be well advised to confirm the existence of an actual injury before once again availing themselves of the judicial process.").

[2] Although not pertinent for purposes of this Motion to Dismiss, Plaid notes that, had Plaintiff interacted with Plaid's identity verification services, Plaintiff would have encountered a robust disclosure, which would have required her to affirmatively click the box to consent before continuing, and an opportunity to review Plaid's privacy statement. Of course, Plaintiff does not allege any facts to suggest she has interacted with Plaid's identity verification services, instead citing only to Plaid's public-facing webpage.

this Court lacks personal jurisdiction over Plaid, as Judge Wood determined in another proceeding.[3] Plaintiff's Complaint must therefore be dismissed.

## BACKGROUND

Plaid is a fintech company headquartered in San Francisco, California and providing internet-based services across the United States. Class Action Complaint ¶ 1, ECF No. 1. As a business-to-business company, one of the services Plaid offers to its business customers is an identity verification service called Plaid Identity Verification (or "IDV"). *Id.* ¶ 2. In an effort to reduce financial fraud, Plaid's IDV service allows Plaid's business customers to implement a variety of identity verification and fraud prevention checks as part of their consumer onboarding processes, including Document Verification (verifying that an uploaded identity document is legitimate and unexpired) and "Selfie Check" (verifying that a user's uploaded video is of a real person, and, if Document Verification is enabled, that it matches the photo in the document).[4]

Plaintiff is a serial plaintiff who, between September 2023 and March 2024, has filed seven other putative BIPA class actions pending in this District alone, not to mention other putative class actions she has in Illinois state court. In this lawsuit, Plaintiff claims (incorrectly) that when she opened her accounts with cryptocurrency companies Banxa, Binance, Coinbase, Gemini, and Kraken—companies which she (incorrectly) contends all used Plaid's identity verification service at the time she signed up—"Plaid collected and retained her biometric information." Compl. ¶¶ 1, 4, 6, 8, 10, 12, 28, 30, 32, 34, 36.[5] Plaintiff offers not a single fact, other than her bald say-so, to demonstrate that she interacted with Plaid's identity verification services, instead pointing only to

---

[3] *See* Order (ECF No. 50), *Shah v. Plaid Inc.*, No. 22-cv-903 (N.D. Ill. July 17, 2023), attached as Ex. C.

[4] *See* https://plaid.com/docs/identity-verification/#overview. The Complaint cites this webpage (¶ 2).

[5] Plaintiff has separately sued Binance (a/k/a BAM Trading Services, Inc.) and Banxa for allegedly violating BIPA in connection with the same opening of her accounts. *Wilhelm v. BAM Trading Services, Inc.*, No. 23-cv-14906 (N.D. Ill.); *Wilhelm v. Banxa Holdings, Inc.*, No. 2023CH08359 (Cir. Ct. Cook Cty. Ill.).

the general description of the Selfie Check feature on Plaid's public-facing website. *Id.* ¶ 2. Plaintiff's claims fail as a matter of law and should be dismissed for at least three reasons.

<u>First</u>, Plaintiff lacks standing because she does not and cannot establish an injury in fact under BIPA. Plaintiff does not allege—and therefore has not established—that Plaid actually collected her biometric information, a critical dependency for her to demonstrate standing. Nor could she, given that none of the five Plaid customers (through which she claims to have been exposed to Plaid's identity verification services) actually used those services at the time Plaintiff opened her accounts with them.

<u>Second</u>, Plaid is statutorily exempt from BIPA, as it is a financial institution subject to Title V of the federal Gramm-Leach-Bliley Act. Both Plaid's identity verification services, as well as its broader product offerings, all constitute "financial activities" within the meaning of the GLBA, thus subjecting Plaid to the GLBA requirements applicable to financial institutions and exempting it from BIPA.

And <u>finally</u>, there is no personal jurisdiction over Plaid. Plaid is a Delaware corporation headquartered in California that is not alleged to have any contacts with Illinois. Plaid is not registered to do business in Illinois, has no physical property or offices in Illinois, and has no mailing address, telephone listing, or bank account in Illinois. Plaid does not direct any advertising or marketing to Illinois specifically, and Plaintiff's claim that Plaid's third-party customers somehow created sufficient contacts between Plaid and Illinois is a theory that has been repeatedly rejected, including specifically in the context of BIPA claims. Plaintiff's claims against Plaid should be dismissed in their entirety.

## **LEGAL STANDARDS**

Federal Rule of Civil Procedure 12(b)(1) allows parties to challenge a pleading based on a lack of subject-matter jurisdiction, including for lack of standing under Article III of the U.S.

Constitution. *See Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). "Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing each element of standing to pursue her claims. *Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015). "A standing challenge may be facial—accepting all well-pleaded allegations as true, plaintiff still lacks standing—or factual—requiring plaintiff to move beyond mere allegations and put forth actual evidence to support standing." *63d & Morgan Currency Exch., Inc. v. Citibank, N.A.*, No. 23-cv-5048, 2024 WL 245189, at *2 (N.D. Ill. Jan. 23. 2024) (citing *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022)). As shown below, Plaintiff fails to establish standing here under either measure.

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal based on a pleading's "failure to state a claim upon which relief can be granted." To withstand dismissal under Rule 12(b)(6), the Complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal based on a lack of personal jurisdiction. Plaintiff bears the burden of establishing a *prima facie* case for

personal jurisdiction. *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Where, as here, the defendant presents affidavits opposing jurisdiction, "[t]he presumption of correctness that [courts] accord to a complaint's allegations falls away on the jurisdictional issue," *Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999), and the plaintiff must "submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Res.*, 338 F.3d at 783.

## ARGUMENT

## I. PLAINTIFF LACKS STANDING TO SUE PLAID.

Plaintiff's Complaint should be dismissed because she cannot establish any injury in fact that would give her standing to sue Plaid. The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Plaintiff brings claims against Plaid under BIPA section 15(b), which imposes restrictions on parties that "collect … or otherwise obtain" a person's biometrics, and BIPA sections 15(a) and (d), which impose additional restrictions on parties "in possession" of biometrics. 740 ILCS 14/15(a)–(b), (d). Thus, for an injury under each section, Plaintiff must establish that Plaid *actually collected* her biometrics. *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 615–16 n.3 (N.D. Ill. 2019) (standing for BIPA actions requires that biometric information "is collected"). She has not done so and cannot do so.

### A. Plaintiff Fails to Sufficiently Plead an Injury in Fact.

To pursue her claims in federal court, Plaintiff must "clearly and specifically set forth facts sufficient to satisfy [the] Art[icle] III standing requirements." *Whitmore v. Arkansas*, 495 U.S. 149,

155 (1990). This requires her to plausibly show, with "well-pleaded factual allegations," that she suffered a BIPA injury-in-fact fairly traceable to Plaid. *Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015). Plaintiff's Complaint omits any such facts and facially fails to establish Plaintiff's standing to sue Plaid. *See id.*

Plaintiff vaguely alleges that when she opened accounts with Banxa, Binance, Coinbase, Gemini, and Kraken, "Plaid collected and retained her biometric information *as detailed herein*." Compl. ¶¶ 4, 6, 8, 10, and 12 (emphasis added). But the Complaint lacks that critical "detail" of how Plaid actually allegedly collected and retained Plaintiff's biometric information. Instead, Plaintiff merely alleges that Plaid, as part of the verification services it offers to certain of its business customers, *may* "collect[] users' government issued identification" and *may* have "the user submit a real time photograph or video of their face, i.e. a 'selfie.'" *Id.* ¶ 2. Plaintiff does not allege *she* ever submitted her identification card or a "selfie" to Plaid in connection with opening her accounts (because she could not have). Without a factual allegation that Plaid *actually* collected Plaintiff's biometric information, she lacks standing to sue under BIPA. Her "[t]hreadbare recitals of the elements of a [BIPA] cause of action, supported by mere conclusory statements" do not suffice. *Iqbal*, 556 U.S. at 678.[6]

## B.     Plaintiff In Fact Cannot Show an Injury.

Plaintiff's omission of the above-described critical factual details cannot be cured by amendment. Plaid could not possibly have injured Plaintiff when she allegedly opened accounts with any of the five companies as asserted in the Complaint, because none of those companies was using Plaid's identity verification services at the time.  There is in fact no standing for Plaintiff to

---

[6] This has been found by courts to require dismissal of BIPA claims under Fed. R. Civ. P. 12(b)(6) as well. *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966 (N.D. Ill. 2020) (dismissing BIPA claims under Rule 12(b)(6) where "Heard repeatedly alleges that BD 'collected' his biometric data without alleging how, when or any other factual detail").

sue Plaid. *See Silha*, 807 F.3d at 173 ("A factual challenge contends that there is *in fact* no subject matter jurisdiction even if the pleadings are formally sufficient.") (quotation omitted) (emphasis original).

In reviewing this factual challenge, "the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Id.* To start, as of when Plaintiff filed her Complaint, Banxa, Coinbase, Gemini, and Kraken were not even using Plaid's identity verification services. *See* Decl. of Alan Meier ¶¶ 11–12. While Plaid currently provides identity verification services to Binance, Plaid did not provide these services until October 2022. *Id.* ¶ 13. Plaintiff has already sworn under oath that she opened her Binance account in 2021, long before Plaid ever provided Binance with the identity verification services that are the purported basis for Plaintiff's BIPA claims. *See* Decl. of Candice Wilhelm ¶ 1, *Wilhem v. BAM Trading Servs, Inc.*, No. 23-cv-14906 (N.D. Ill. Dec. 13, 2023), ECF No. 23-1, attached as Ex A. Plaid could not have collected Plaintiff's biometrics when she allegedly opened these accounts, because none of the companies used Plaid's identity verification services at the time. Further, Plaid does not have any record of Plaintiff interacting with Plaid's identity verification technology in connection with Binance.US. *See* Meier Decl. ¶ 14.

Without any facts—or even plausible allegations—establishing that Plaid collected Plaintiff's biometrics, Plaintiff cannot show an injury in fact traceable to Plaid. *See*, *e.g.*, *Flynn*, 39 F.4th at 952 (affirming dismissal of overpayment claims where plaintiffs failed to "cit[e] specific evidence … demonstrating that they suffered an overpayment injury"); *Weaver v. Champion Petfoods USA Inc.*, 471 F. Supp. 3d 876, 883 (E.D. Wis. 2020), *aff'd*, 3 F.4th 927 (7th

Cir. 2021) (a plaintiff "lacks standing to sue for a risk of harm he never experienced.").[7] The Complaint should be dismissed under Rule 12(b)(1).

## II. PLAID IS A GLBA "FINANCIAL INSTITUTION" EXEMPT UNDER BIPA.

The Complaint should also be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff cannot state a BIPA claim against Plaid. BIPA expressly exempts from its provisions any financial institution that is subject to GLBA, like Plaid: "Nothing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." 740 ILCS14/25(c). As Section 25(c) "goes out of its way to use the term 'financial institution' in combination with Title V of Gramm-Leach, which in turns provides its own definition of that term," the exception necessarily "applies to 'financial institutions' *as defined* by Title V." *McGoveran v. Amazon Web Servs., Inc.*, No. 1:20-cv-1399, 2023 WL 2683553, at *5 (D. Del. Mar. 29, 2023) (emphasis original).

Title V of GLBA defines a "financial institution" subject to its provisions as "any institution" whose business engages in any of the "financial activities" described in 12 U.S.C. § 1843(k) (the Bank Holding Company Act). 15 U.S.C. § 6809(3)(A). This encompasses entities that may "not traditionally [be] recognized as financial institutions." *Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1171 (C.D. Ill. 2022); *see also Powell v. DePaul Univ.*, No. 21-cv-3001, 2022 WL 16715887, at *3 (N.D. Ill. Nov. 4, 2022) ("At least five courts . . . have concluded that the

---

[7] *See also Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-cv-7962, 2023 WL 5935694, at **4–5 (S.D.N.Y. Sept. 12, 2023) ("[T]he Complaint's standing allegations are so contradicted by Defendant's proffered evidence that the factual challenge is dispositive . . . ."); *Zapadinsky v. Blue Diamond Growers*, No. 23-cv-231, 2023 WL 5116507, at *5 (E.D. Wis. Aug. 7, 2023) (dismissing claims based on "Defendant's undisputed evidence" showing plaintiff suffered no injury).

exemption in BIPA section 25(c) applies to institutions of higher education that are significantly engaged in financial activities such as making or administering student loans.").

Subsection (k) of Section 1843 describes these activities as those that the Federal Reserve Board has determined (by regulation or order) are "financial in nature or incidental to such financial activity," or else are "complementary to a financial activity and do[] not pose a substantial risk to the safety or soundness of depository institutions or the financial system generally." 12 U.S.C. § 1843(k)(1). A company engaging in any of these activities is a "financial institution" subject to Title V of GLB, and thereby excluded from BIPA under 740 ILCS14/25(c). *See* 15 U.S.C. § 6809(3)(A); 12 C.F.R. § 1016.3(l)(3)(ii) (listing examples of "financial institutions," such as a "retailer that extends credit by issuing its own credit card directly to consumers").[8] Plaid plainly is a "financial institution" subject to Title V of GLBA, and thus exempted from BIPA, because it engages in activities that are "financial in nature or incidental to such financial activity" as determined by the Federal Reserve Board.

### A.      Plaid's Identity Verification Services Are Financial in Nature or Incidental to Financial Activity.

The Complaint alleges Plaid is engaged in the business of providing "identity verification services" to its business customers, Compl. ¶¶ 1–2, which services the Complaint alleges violate BIPA. *Id.* ¶¶ 38, 65. But these services are financial activities, rendering Plaid subject to Title V of GLBA and exempt from BIPA. *See McGoveran*, 2023 WL 2683553, at **6–8.

According to the Federal Reserve Board, "authenticating the identity of persons conducting financial and nonfinancial transactions" are "financial in nature or incidental to a financial activity." 12 C.F.R. § 225.86(a)(2)(iii) (citing *Bayerische Hypo- und Vereinsbank AG, et al.,* 86

---

[8] This regulation was promulgated by the Consumer Financial Protection Bureau pursuant to the Title V rulemaking authority it received in the 2010 Dodd-Frank Act. 12 U.S.C. § 5512(b).

Federal Reserve Bulletin 56 (2000)). In the Federal Reserve order cited in this regulation, the Board allowed several bank holding companies to establish a global identity verification system for their customers. See 86 Fed. Res. Bull. 56, 57, 2000 WL 49269, at **1–2. The Board determined that "authenticating the identity of customers conducting financial and nonfinancial transactions are activities that are closely related to banking." *Id.* at 59 (emphasis added). This order took effect on November 10, 1999, *id.* at 61, two days prior to the enactment of GLBA, and it is now codified at 12 C.F.R. § 225.86(a)(2)(iii).

Subsection (k) of Section 1843 (which, as noted previously, describes "financial activities" qualifying an entity as a "financial institution" under Title V of GLBA) states activities that "*shall* be considered to be financial in nature" specifically include "any activity" that the Federal Reserve Board had "determined, by order or regulation that is in effect on November 12, 1999, to be so closely related to banking or managing or controlling banks as to be a proper incident thereto." 12 U.S.C. § 1843(k)(4)(F). Since the Federal Reserve Board had determined by November 10, 1999, that "authenticating the identity of customers conducting financial and nonfinancial transactions are activities that are closely related to banking," 86 Fed. Res. Bull. 56, 57, 61, and this determination is now codified in a regulation, 12 C.F.R. § 225.86(a)(2)(iii), the verification activities performed by Plaid are "financial in nature." 12 U.S.C. § 1843(k)(1), (4)(F). That subjects Plaid to Title V of GLBA, 15 U.S.C. § 6809(3)(A), which exempts Plaid from BIPA. 740 ILCS 14/25(c); *McGoveran*, 2023 WL 2683553, at **6–7.

**B.     Plaid's Other Services are Financial in Nature or Incidental to Financial Activity.**

In addition to its identity verification services, Plaid also offers, as a financial data access platform (or aggregator of financial data), other "data processing, data storage and data transmission services" that are financial in nature. 12 C.F.R. § 225.28(b)(14)(i)(A). Plaid's

financial data access platform (or financial data aggregation) services make it a "financial institution" under GLBA, an independent basis (in addition to the argument in Section A above) on which Plaid is exempt from BIPA.

As stated in Regulation Y, the Federal Reserve Board has determined these services qualify as a financial activity if "[t]he data to be processed, stored or furnished are financial, banking or economic." *Id.*; 12 C.F.R. § 380.8(b)(3)(N)(1). This includes services that permit the "efficient[] transfer [of] data from one form to another," and "allow[] customers to identify themselves reliably to counterparties in electronic transactions," Fed. Reserve Bd. Interpretive Letter, 2001 WL 35988615, at *1 (June 5, 2001), as well as services that "compile[]" or "aggregate" an "individual's on-line accounts (such as credit cards, mortgages, and loans)" to allow "access[ng] all of [one's] account information through that Internet site." Fed. Trade Comm'n Final Rule, *Privacy of Consumer Financial Information*, 65 FR 33646-01, 33655 (May 24, 2000).

Plaid's other offerings squarely fall within this category of financial activities, which independently makes it a "financial institution" subject to Title V of GLBA. *See* 15 U.S.C. § 6809(3)(A) ("financial institution" is "any institution" engaging in any of the "financial activities"). In addition to the foregoing identity verification services, Plaid separately provides products and services to its business customers (fintech applications) that allow consumers of those applications to securely and easily link their bank accounts to the applications.[9] With Plaid's linking technology, consumers can readily access and share information from their bank accounts with their chosen applications. For example, a financial budgeting application needs a consumer's transactions records in order to help that consumer formulate a budget and to provide spending

---

[9] *See*, *e.g.*, products described at https://plaid.com/docs (last visited March 18, 2024). The Complaint cites this webpage (¶ 2), so the Court may consider its other parts under the incorporation by reference doctrine or alternatively may take judicial notice of them. *See McGoveran*, 2021 WL 4502089, at *4 n. 3; *James v. City of Evanston*, No. 20-cv-00551, 2021 WL 4459508, at *7 n.3 (N.D. Ill. Sept. 29, 2021).

insights, or a peer-to-peer payments company needs the account and routing number of the bank account from which a consumer wants to make payments before a consumer can send money. With Plaid's technology, consumers can access and share their transactions records and account and routing number, respectively, with their selected budgeting and peer-to-peer payment applications. As Plaid clearly provides "data processing, data storage and data transmission services" for data that is "financial, banking or economic," 12 C.F.R. § 225.28(b)(14)(i)(A), it engages in these financial activities as well, making it even more obviously a financial institution subject to Title V of the GLBA that is exempt from BIPA. *See* 740 ILCS 14/25(c).

## III. THE COURT LACKS PERSONAL JURISDICTION OVER PLAID.

The Complaint should also be dismissed under Federal Rule of Civil Procedure 12(b)(2) because Plaid is subject to neither general nor specific personal jurisdiction in Illinois. A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if the state courts in that forum would have jurisdiction. *See Hyatt Int'l*, 302 F.3d at 713. Since the Illinois long-arm statute permits courts to exercise jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment, 735 ILCS 5/2–209(c), the state statutory and federal constitutional requirements merge into a single inquiry. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Due process allows that "[j]urisdiction over a defendant can be established either through general or specific jurisdiction." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). Neither type of jurisdiction exists over Plaid here.

### A. General Jurisdiction Does Not Exist.

Plaid is not subject to general jurisdiction in Illinois because Illinois is not its home state. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (general jurisdiction requires "affiliations with the State [that] are so 'continuous and systematic' as to render [the corporation] essentially at home in the forum State") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

915, 919 (2011)). The Supreme Court has identified only two places where a corporation is "at home": its place of incorporation and its principal place of business. *Id.* at 137. Plaid is a Delaware corporation with its place of business in California. Meier Decl. ¶ 3; *see also* Restated Certificate of Incorporation, attached as Ex. B. It is at home in California or Delaware, not Illinois.

### B. Specific Jurisdiction Does Not Exist.

#### 1. *The Complaint Does Not Allege Contacts by Plaid with Illinois.*

Because general jurisdiction does not exist, Plaintiff can only rely on specific jurisdiction, which requires her to show (1) Plaid has sufficient contacts with Illinois and (2) Plaintiff's alleged injuries arise out of those contacts. *N. Grain Mktg. v. Greving*, 743 F.3d 487, 491–92 (7th Cir. 2014). Plaintiff identifies *no* "suit-related conduct" by Plaid in Illinois, let alone the "substantial connection" required for specific jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The Complaint contains only two conclusory allegations concerning Plaid and Illinois. First, Paragraph 22 alleges "Plaid is domiciled within this judicial district," but the Complaint offers no facts to support this conclusion. That is because it is untrue. Plaid is based in California, not Illinois. Meier Decl. ¶ 3. Second, Paragraph 25 alleges "Plaid has deliberately availed itself to [*sic*] conducting business with Illinois residents and has directly and indirectly, through its clients, specifically targeted Illinois residents to conduct business with," but this is another bare legal conclusion, unsupported by factual allegations of any kind. These conclusory allegations are insufficient to establish even a *prima facie* case of jurisdiction. *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015) ("Conclusory allegations are insufficient to establish a prima facie case of jurisdiction . . . .") (quotation omitted).

The only factual allegation in the Complaint regarding Illinois is that Plaintiff resides in this state. Compl. ¶ 22. But the Supreme Court has repeatedly held "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285–86 (2014) (collecting cases).

Instead, "it is *the defendant's conduct* that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* (emphasis added). The Complaint alleges no acts whatsoever by Plaid in Illinois, much less any that violated BIPA.

2.    *Plaid Has Virtually No Contacts with Illinois.*

This is not surprising, as Plaid has no physical presence in Illinois and no contacts with this state that relate in any way to this lawsuit. *Cf.* Ex. 3 at 3–4 (dismissing complaint because there was no evidence showing Plaid "purposefully directed" conduct at Illinois). Plaid is not registered with the Illinois Secretary of State; it has no physical property or offices in Illinois; and it has no mailing address, telephone listing or bank account in Illinois. Meier Decl. ¶¶ 4–7. Moreover, Plaid's identity verification services, which are the subject of the Complaint, are offered to businesses, not individual consumers in Illinois or elsewhere. *Id.* ¶ 10. Plaid markets these services to potential business customers across the United States and the world; it does not direct any advertising or marketing to Illinois specifically. *Id.*

While Plaintiff alleges in conclusory fashion that Plaid targets Illinois residents "through its [business] customers," Compl. ¶ 22, that is wholly insufficient to establish specific personal jurisdiction. For specific jurisdiction to satisfy due process, the *defendant*, and not others, must have purposefully "targeted" the forum in some way. *Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802–03 (7th Cir. 2014). The reason for this purposeful-targeting requirement is to "ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Tamburo*, 601 F.3d at 702 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement." *Adv. Tactical Ordnance*, 751 F.3d at 803. Yet third-party contacts are all Plaintiff identifies here: Plaid's services to "its clients" Banxa, Binance, Coinbase, Gemini, and Kraken. Compl. ¶ 1.

Plaintiff's theory is that, by supposedly providing identity verification services to these third parties, which in turn provided "crypto" services to Plaintiff and other Illinois residents, Plaid subjected itself to specific jurisdiction in this state. *Id.* ¶ 22. This theory has been resoundingly rejected by courts. A "defendant cannot be hauled into a jurisdiction solely as a result . . . of the unilateral activity of another party or a third person." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 623–24 (7th Cir. 2022) (quoting *Burger King*, 471 U.S. at 475); *see also Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) ("It is the defendant—not the plaintiff or third parties—that must create the contacts in the forum state . . . ."); *Adv. Tactical Ordnance*, 751 F.3d at 802 ("The relation between the defendant and the forum 'must arise out of contacts that the defendant *himself* creates with the forum State.'") (quoting *Walden*, 571 U.S. at 285) (emphasis original). Accordingly, courts in this District have repeatedly dismissed BIPA complaints based on the plaintiff's use of an out-of-state vendor's biometric-enabled technology in Illinois.[10] Plaintiff's Complaint is premised on the same invalid theory and should meet the same fate.

## CONCLUSION

For all the foregoing reasons, Plaid respectfully requests that the Court dismiss the Complaint with prejudice.

---

[10] *See Castelaz v. Estee Lauder Companies*, No. 22-cv-5713, 2024 WL 136872, at *4 (N.D. Ill. Jan. 10, 2024) (dismissing for lack of personal jurisdiction: "Plaintiffs' claim hinges solely on the allegation that they visited ELC's branded websites, where they accessed and engaged with [Perfect's augmented reality technology]; thus, the only connection between Perfect and the forum state are Plaintiffs and ELC."); *Redd v. Amazon Web Servs., Inc.*, 673 F. Supp. 3d 943, 946–47 (N.D. Ill. 2023) (dismissing for lack of personal jurisdiction: "The allegations here reveal only that AWS provided its Rekognition technology to Wonolo, which then used that technology in Illinois. That is the type of 'random, fortuitous, or attenuated' contact that the Supreme Court has cautioned cannot give rise to personal jurisdiction."); *Salkauskaite v. Sephora USA, Inc.*, No. 18-cv-8507, 2020 WL 2796122, at **4–5 (N.D. Ill. May 30, 2022) (no jurisdiction where "the use of ModiFace's [augmented reality] technology" by its customer Sephora in Illinois "would be the result of actions by Sephora, … not by ModiFace itself").

Dated: March 25, 2024                    Respectfully submitted,


                                         By: /s/  Nick Kahlon

                                         Nick Kahlon
                                         John K. Theis
                                         Blake Kolesa
                                         RILEY SAFER HOLMES & CANCILA LLP
                                         70 West Madison Street, Suite 2900
                                         Chicago, Illinois 60602
                                         Telephone: (312) 471-8700
                                         Facsimile: (312) 471-8701
                                         nkahlon@rshc-law.com
                                         jtheis@rshc-law.com
                                         bkolesa@rhsc-law.com

                                         *Counsel for Plaid Inc.*